Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 22 October 1999 as:
 STIPULATIONS
1. On the date of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On the date of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant-employer.
3. Plaintiff sustained an admittedly compensable injury by accident on 17 May 1998.
4. The parties stipulated in the pretrial agreement that plaintiff's average weekly wage was to be determined pursuant to a Form 22 wage chart.
5. In addition to the deposition transcripts and the exhibits attached thereto, the parties stipulated into evidence in this matter a packet of plaintiff's medical records.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner plaintiff was 42 years old. He has a high school diploma. In January 1998 plaintiff was hired as a maintenance supervisor for defendant-employer. This job required physical, manual labor, and he performed the maintenance repairs himself.
2. On 17 May 1998, in the course and scope of his employment, plaintiff sustained a compensable injury by accident to his back. Plaintiff was pulling on an air conditioning unit while he was standing on a roof, and he slipped and fell, landing on his buttocks. Defendants proceeded to begin payments of temporary total disability compensation benefits in the weekly amount of $294.68 to plaintiff pursuant to a Form 60.
3. Plaintiff first sought medical treatment at Battleground Urgent Care. An x-ray revealed severe degenerative disc disease, and a subsequent MRI showed bulging discs at L5-S1 and L4-5. Plaintiff was taken out of work as a result of his injury.
4. Ultimately plaintiff came under the care of Dr. Dalldorf at Guilford Orthopaedic and Sports Medicine Center, who continued to keep plaintiff out of work and ordered physical therapy and additional medication. Dr. Dalldorf also ordered a brace for plaintiff's back. Plaintiff treated with Dr. Dalldorf through 30 October 1998.
5. On 2 September 1998, Dr. Dalldorf indicated that it was "probably okay" for plaintiff to return to work in a light duty capacity with a 25 pound lifting restriction and with limited squatting, bending, and stooping. On 2 October 1998, Dr. Dalldorf felt that plaintiff could return to work in the V-lock back brace, but no specific notations were made regarding work limitations. On 30 October 1998, Dr. Dalldorf released plaintiff from his care, finding plaintiff to be at maximum medical improvement with a 0% permanent impairment rating based upon the fact that plaintiff had good motion and no surgery appeared necessary. Again, no indications were made with respect to plaintiff's specific capacity to work.
6. When Dr. Dalldorf released plaintiff from his care, he did so with the caveat that plaintiff may need additional medical treatment in the future such as medications, therapy, or new back braces. In addition, Dr. Dalldorf has indicated that plaintiff may need to wear a back brace for the remainder of his life when doing heavy labor. Dr. Dalldorf never specifically released plaintiff to unrestricted, full-duty work.
7. Despite the holding in the 3 February 1999 Administrative Decision and Order, Dr. Dalldorf never explicitly released plaintiff to unrestricted, full-duty work. In September 1998 Dr. Dalldorf indicated that plaintiff was capable of limited work. Thereafter, all Dr. Dalldorf's releases to return to work were unspecified. Considering this ambiguity, coupled with the fact that Dr. Dalldorf has indicated that plaintiff was doing well in his mostly sedentary employment, that plaintiff may need a back brace for the remainder of his life when doing heavy labor, and that plaintiff's symptoms have persisted, the Full Commission finds that plaintiff's release to return to work on 30 October 1998 was not a full-duty release but was a release to return to work with unspecified restrictions.
8. Plaintiff's employment with defendant-employer was terminated on or about 21 May 1998. Following his admittedly compensable injury by accident, plaintiff never returned to work for defendants, and because of the termination of his employment, plaintiff was unable to return to work for defendant-employer in neither September nor October 1998 upon his release to return to work. Furthermore, there is no evidence from which the undersigned can find and hold that defendant-employer had available employment suitable for plaintiff's physical capacity as of 30 October 1998, the date Dr. Dalldorf released plaintiff from his care.
9. On 1 December 1998, plaintiff returned to work at wages greater than his preinjury average weekly wage for an employer other than defendant-employer. Plaintiff's new employment was as a property manager for apartments, and this job is one that he has been able to perform. Plaintiff was still working in this capacity as of the date of the hearing in the matter before the Deputy Commissioner.
10. On or about 18 November 1998, defendants filed a Form 24 application with the Industrial Commission seeking to terminate plaintiff's temporary total disability compensation on grounds that plaintiff had reached maximum medical improvement and had been released to return to work. The application was initially denied for lack of supporting documentation in an Administrative Decision and Order filed on 16 December 1998. Defendants' filed a motion to reconsider which contained supporting documentation and which resulted in a 3 February 1999 order terminating plaintiff's benefits as of 30 October 1998. The Administrative Decision and Order was improvidently allowed.
11. At defendants' request, plaintiff underwent an independent medical evaluation with Dr. Curling, a neurosurgeon, on 8 December 1999. Dr. Curling noted that plaintiff's symptoms had persisted, including undiagnosed neck complaints, and as of that date, he would not consider plaintiff to be at maximum medical improvement. Additionally, Dr. Curling recommended that if plaintiff's symptoms continued to persist, he should undergo further diagnostic testing in the form of a lumbar and cervical myelogram and post myelogram CT. Defendants have never authorized this testing and it has not been performed; therefore, Dr. Curling was unable to assess or assign an appropriate permanent partial impairment rating.
12. Plaintiff returned to Dr. Dalldorf on 5 April 2000, at which time plaintiff had shown overall improvement in his condition. Plaintiff had negative results in the straight-leg raising test, good range of motion, and pain that was essentially controlled by occasional use of over-the-counter medication. Accordingly, Dr. Dalldorf felt that the myelogram testing was not necessary and that plaintiff remained at maximum medical improvement with no permanent impairment. The subsequent assessment in his deposition by Dr. Dalldorf of a 2.5% rating to each degenerative disc (for a total of 5% to plaintiff's back) is not applicable to his injury by accident but is based solely upon the preexisting condition of plaintiff's back.
13. Plaintiff reached maximum medical improvement by 5 April 2000; however, he was capable of earning pre-injury wages by 1 December 1998. No weight is accorded the opinion of Dr. Dalldorf that plaintiff reached maximum medical improvement on 30 October 1998 and has no permanent impairment.
14. Plaintiff is entitled to a second opinion with a physician of his choosing regarding whether he has retained any permanent impairment due to his compensable injury by accident.
15. The parties stipulated in the pretrial agreement that plaintiff's average weekly wage was to be determined pursuant to a Form 22 wage chart. However, subsequently, no Form 22 wage chart was produced. The Form 60 filed in this matter indicates that plaintiff's average weekly wage on 17 May 1998 was $442.00. This yields a compensation rate of $294.68.
16. Plaintiff will likely need future medical care as a result of his injury in order to provide relief.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following :
 CONCLUSIONS OF LAW
1. In the absence of evidence to the contrary, and based upon the calculations set forth on the Form 60 Employer's Admission of Employee's Right to Compensation, plaintiff's average weekly wage on 17 May 1998 was $442.00, which yields a compensation rate of $294.68. N.C. Gen. Stat. § 97-2(5).
2. Plaintiff sustained a compensable injury by accident to his back on 17 May 1998 for which defendants admitted plaintiff's right to compensation. N.C. Gen. Stat. § 97-2(6).
3. Although the filing of a Form 60 did not establish a presumption of continuing disability in plaintiff's favor, plaintiff established through medical evidence that as a result of his compensable injury by accident, he was temporarily totally disabled from 18 May 1998 until 1 December 1998. N.C. Gen. Stat. § 97-29. Given the greater weight of the evidence, plaintiff's release to return to work on 30 October 1998 was not a full-duty release without any limitations or restrictions. Plaintiff's disability continued after Dr. Dalldorf's 30 October 1998 release of plaintiff to return to work. Plaintiff was not at maximum medical improvement on 30 October 1998.
4. Plaintiff was no longer totally disabled within the meaning of the Act upon his return to work on 1 December 1998 at wages greater than his preinjury average weekly wage. N.C. Gen. Stat. §§ 97-2(9) and97-18.1(b).
5. Plaintiff is entitled to have defendants provide such medical treatment as is reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§97-2(19) and 25. Further diagnostic testing as recommended by Dr. Curling is not reasonably necessary at this time to effect a cure, give relief, or lessen the period of plaintiff's disability; however, plaintiff is entitled to future medical treatment.
6. Plaintiff is entitled to a second opinion with a physician of his choosing regarding the assessment of a permanent partial impairment rating. N.C. Gen. Stat. § 97-27(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff temporary total disability benefits in the weekly amount of $294.68 from 31 October through 30 November 1998. This compensation has accrued and shall be paid in a lump sum. Defendant is entitled to a credit for any indemnity compensation paid to plaintiff after 1 December 1998.
2. Defendants shall pay medical expenses incurred or to be incurred in the future as a result of plaintiff's compensable injury according to procedures adopted by the Commission.
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the compensation awarded to plaintiff herein. Accordingly, defendants shall deduct one-fourth of the amount owed plaintiff and shall forward this amount directly to plaintiff's counsel.
4. The issue regarding plaintiff's impairment rating is deferred pending the results of a second opinion evaluation with a physician of plaintiff's choosing. This evaluation shall be at defendants' expense. If the parties cannot resolve this particular matter, either side may move the Industrial Commission to have the issue placed back on the hearing docket for resolution.
5. Defendants shall bear the costs of this proceeding.
6. For the reasons set forth herein, the 3 February 1999 Administrative Decision and Order is HEREBY VACATED.
This the ___ day of August, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER